

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**VICKIE B. CUMMINS**                                                                     **PLAINTIFF**

V.                                                    CIVIL ACTION NO.: 3:15cv74 DPJ-FKB

**NEELY & NEELY TRUCKING, INC.**                                           **DEFENDANT**

### COMPLAINT
### JURY TRIAL DEMANDED

**COMES NOW** the Plaintiff, Vickie B. Cummins, by and through her counsel, Watson & Norris, PLLC, and files this action to recover damages for violations of her rights under The Fair Labor Standards Act (FLSA), Negligence, Wrongful Termination and Retaliation, against Defendant, Neely & Neely Trucking, Inc. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

### PARTIES

1. Plaintiff, Vickie B. Cummins, is a resident of Rankin County, Mississippi, residing at 139 Collier Cove, Brandon, Mississippi 39042.

2. Defendant, Neely & Neely Trucking, Inc., may be served with process through its registered agent: Roy W. Neely, Jr., 1281 Old Brandon Road, Flowood, Mississippi 39232.

3. The Defendant falls within the definition of a covered employer as set out in Section 203 of the Fair Labor Standards Act.

### JURISDICTION AND VENUE

4. This court has federal question jurisdiction.

5. This Court has personal jurisdiction over the Defendant and venue is proper in this

Court.

7. Jurisdiction of this civil action is conferred by Section 16(b) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 216(b) and venue is proper in this Court.

## STATEMENT OF THE FACTS

8. In August, 2014, Plaintiff was employed by Neely & Neely Trucking, Inc., as a Dump Truck Driver.

9. During the course of working for the Defendant, Plaintiff began having headaches, nausea, shortness of breath, and feeling fatigued all the time.

10. Around the first of December, 2014, the clutch in Plaintiff's truck went out. While Plaintiff's truck was in the shop, Plaintiff drove another truck for a couple of days. While driving this truck, Plaintiff noticed that she felt better and did not have the symptoms she was having while in her truck.

11. On Monday, December 8, 2014, Defendant gave Plaintiff her truck back. The next day, Plaintiff was in her truck from 6:00 a.m. until 7:00 p.m. When Plaintiff got back to the shop that evening, Plaintiff told a co-worker, David Rigsby, that she felt horrible and had been feeling like this for awhile. Mr. Rigsby told Plaintiff that she felt that way because of the exhaust leak on Plaintiff's truck. Mr. Rigsby told Plaintiff he would not drive that truck for that reason and that the exhaust leak on Plaintiff's truck had been that way for a long time. Plaintiff's immediate response to Mr. Rigsby was "and now you tell me." Mr. Rigsby also told Plaintiff that he had mentioned the exhaust leak several times to Roy "Buck" Neely, but it had never been fixed. That day Plaintiff documented this on her Daily Log report and then called Mr. Neely. Plaintiff told Mr. Neely how sick she had been feeling and that she had been exposed to the toxic fumes from the exhaust pipe

on her truck.

12. On Wednesday, December 10, after Plaintiff dumped the last load on her truck, Plaintiff pulled over to the side of the road to get some fresh air. Another dump truck driver, John, pulled over to see if Plaintiff was okay. When John realized how sick Plaintiff was, he began to look under Plaintiff's truck to see if he could find an exhaust leak. The exhaust pipe under the cab of the truck had two clamp looking things on it that were covering up holes in the exhaust pipe. It was evident that one of the clamps was not covering up one of the holes and it was leaking exhaust because there was black soot all over the pipe. When John saw this, he pointed it out to Plaintiff and said, "there is your problem, right there." Plaintiff called the office to let Mr. Neely know that the job for that day had shut down at 1:00. Plaintiff told Mr. Neely that the smell inside her truck was almost unbearable. Mr. Neely told Plaintiff to bring the truck in and speak to the mechanic at the shop about it.

13. The next day, December 11, 2014, Plaintiff's symptoms were much worse so she went to the Emergency Room at UMMC. After having blood work done, the attending Physician told Plaintiff that she had traces of Carbon Monoxide in her blood. Plaintiff had not been exposed to the Carbon Monoxide since 1:45 p.m. the day before and there were still traces of it in her blood. Plaintiff also complained of her chest hurting and how she could hardly catch her breath. After doing a EKG and CT Scan of her heart and these showed no signs of heart trouble, Plaintiff was released to go home.

14. Plaintiff returned to work the next morning, December 12, 2014, and she was given Mr. Neely's truck to drive that day. After working for several hours, Plaintiff's head and chest began to hurt so bad that she texted Mr. Neely to let him know that she was going to have to quit after she

dumped the load she had. Mr. Neely's response to Plaintiff was "No Mam." Plaintiff then texted Mr. Neely and told him that he knew that she was in the hospital the day before and that she really did not feel like coming in that day, but she was just trying to do her job and help him out. Mr. Neely's response to Plaintiff was, "I didn't twist your arm to come in." Mr. Neely then told Plaintiff that if she was quitting for the day, she could look elsewhere for another job.

15. When Plaintiff arrived at the shop, the pain in her chest was almost unbearable and Plaintiff could hardly catch her breath. Mr. Neely and Josh were standing out in front of the shop when Plaintiff pulled in. Instead of coming to check on Plaintiff, Mr. Neely, nor anyone else came over to check on Plaintiff. Plaintiff called 911 herself and was taken to the Emergency Room at the University of Mississippi Medical Center. Later that day, Plaintiff sent Mr. Neely a text message to let him know that Plaintiff's husband would be coming to pick up her car. Plaintiff also asked in the test message if Mr. Neely would have her check ready, since Plaintiff had been terminated earlier that day for quitting work early due to illness caused by exhaust fumes inside her truck that she drove for the Defendant.

16. The Defendant knew that the truck that Plaintiff drove needed repairs on the exhaust system. The symptoms that Plaintiff had and the amount of carbon monoxide poisoning found in Plaintiff's blood is evidence that the exhaust had been leaking and entering the cab of the truck for a some time.

17. Instead of placing Plaintiff in another truck, the Defendant terminated Plaintiff for complaining about an unsafe work environment to her boss, Mr. Neely. The Defendant was aware that the exhaust leaked and the Defendant failed to warn Plaintiff of it when Plaintiff was assigned to drive it.

needed medical care, the Defendant retaliated against Plaintiff by terminating her employment. Under the federal Occupation Safety and Health Act (OSHA), employers are prohibited from terminating employees because they make complaints about the employer's OSHA violations. These complaints are often made about an employer that does not meet state or federal health and safety standards. The federal Occupation Safety and Health Act (OSHA) guarantees employees the right to a workplace free of safety and health hazards.

27. Plaintiff has been harmed as a result of her termination, and the Defendant is liable to Plaintiff for the same.

28. The acts of the Defendant constitute a willful and intentional violation of the tort of wrongful termination.

### COUNT THREE: NEGLIGENCE - DANGEROUS EXPOSURE TO CARBON MONOXIDE

29. Plaintiff re-alleges and incorporates all averments set fourth in paragraphs 1 through 28 above as if fully incorporated herein.

30. On August 4, 2014, and at all times material, the Defendant's truck was used by Plaintiff while engaging in business activity at the direction of the Defendant.

31. On August 4, 2014, and at all times material, Defendant was aware of the exhaust leak on the truck that was assigned to the Plaintiff by the Defendant.

32. At all material times, Defendant owed a duty to repair any concerns in the operation and/or use of the truck driven by Plaintiff while engaging in business activity at the direction of the Defendant.

33. At all material times, Defendant breached it's duty of care to Plaintiff and the

18. When Plaintiff was hired by the Defendant in August, 2014, Defendant initially agreed to pay Plaintiff overtime pay at 1 ½ times her regular rate of pay.

19. As an employee of the Defendant, the Plaintiff consistently worked over forty (40) hours each work week.

20. Plaintiff was not compensated at a rate of one and one-half (1 ½) her hourly rate for all overtime hours worked in each work week while employed with Defendant.

## CAUSES OF ACTION

### COUNT ONE: VIOLATION OF THE FAIR LABOR STANDARDS ACT

21. Plaintiff and other similarly situated individuals were non-exempt employees and subject to the provisions of the Fair Labor Standards Act as it pertains to whether or not Plaintiff was entitled to overtime pay for all overtime hours worked.

22. The Fair Labor Standards Act requires that employees be paid an overtime premium at a rate not less than one and one-half (1 ½) times the regular rate at which they are employed for all hours in excess of forty (40) hours in a work week. 29 U.S.C. § 207(a).

23. Plaintiff and other similarly situated employees have not been paid overtime compensation under the Fair Labor Standards Act at a rate of 1 ½ their regular rate of pay.

24. The acts of the Defendant constitutes a willful intentional violation of the Fair Labor Standards Act.

### COUNT TWO: WRONGFUL TERMINATION/RETALIATION

25. Plaintiff incorporates the above paragraphs 1 through 24 as though specifically set forth herein and alleges as follows:

26. After Plaintiff had to stop working on December 12, 2014, because she was sick and

Page 5 of 8

Defendant was negligent and careless in the ownership, operation and/or maintenance of Plaintiff's truck.

34. The Defendant, was negligent in their:

   a. Failure to maintain the subject vehicle in a safe and reasonable manner;

   b. Failure to operate the subject vehicle in compliance with state and local traffic laws;

   c. Failure to warn Plaintiff of the exhaust leak; and

   d. Other acts of negligence to be determined through discovery.

35. As a direct, foreseeable, and proximate result of Defendant's negligence, Plaintiff has suffered physical and emotional injuries.

36. As a further direct and proximate result of Defendant's negligence, Plaintiff Plaintiff has incurred medical expenses for her care and treatment in an effort to alleviate and cure her injuries, and will continue to incure additional expenses in the future.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1. Reinstatement or front pay in lieu of reinstatement;
2. Back pay;
3. Compensatory damages;
4. Liquidated damages;
5. Punitive damages;
6. Attorney's fees;
7. Costs and expenses; and
8. Any other relief to which she may be properly entitled.

THIS the 2nd day of February, 2015.

Respectfully submitted,

VICKIE B. CUMMINS, PLAINTIFF

By: *Louis H. Watson, Jr.*
Louis H. Watson, Jr.  (MB#9053)
Nick Norris (MB#101574)
Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
1880 Lakeland Drive, Suite G
Jackson, Mississippi 39216-4972
Telephone: (601) 968-0000
Facsimile:   (601) 968-0010
Email: louis@louiswatson.com